## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VERONICA RANSOME, | **:** | DOCKET NO.: 3:17cv1212(SRU) |
| Plaintiff, | **:** | |
| | **:** | |
| v. | **:** | |
| | **:** | |
| YALE NEW HAVEN HOSPITAL, INC., | **:** | |
| Defendant. | **:** | December 28, 2018 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT YALE NEW HAVEN HOSPITAL, INC.

The defendant, Yale New Haven Hospital, Inc., hereby submits the following memorandum of law in support of its motion for summary judgment on all counts of the plaintiff's complaint, and on its Fifth and Sixth Affirmative Defenses.

## I.  PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff commenced this action in Connecticut Superior Court via a writ, summons and complaint dated June 19, 2017, with a return date of July 11, 2017.  The defendant, Yale New Haven Hospital, Inc., removed the case to the U.S. District Court on July 20, 2017.  (Doc. 1).  The operative complaint remains the plaintiff's original complaint. (Doc. 1-1).

The plaintiff alleges that at "approximately 4:00 a.m. on June 23, 2014, in the vicinity of Park Street and Howard Avenue in New Haven, the defendant was attacked and beaten by two officers of Yale New Haven Hospital Protective Services, Richard Dunn and E. Diaz." (Doc. 1-1, Complaint, ¶ 3).  The plaintiff alleges that Dunn and Diaz were acting within the scope of their employment with Yale and "for the financial benefit of the defendant."  (Id., at ¶ 4).  The plaintiff alleges that Dunn and Diaz "by virtue of their employment as officers with Yale-New Haven Hospital Protective Services, possessed and at the said time and place exercised law enforcement powers and thus were acting under color of law." (Id., at ¶ 5).  The plaintiff alleges

1

that the conduct of Dunn and Diaz was "extreme and outrageous," and was likely to cause the plaintiff to suffer severe emotional distress. (Id., at ¶ 6). The plaintiff alleges that as a result of the alleged actions of Dunn and Diaz that the plaintiff suffered "pain, cuts, bruising, loss of blood, and severe emotional distress manifested in many ways including loss of sleep, nervousness, headache, and loss of appetite." (Id., at ¶7).

The plaintiff has asserted three counts against the defendant. Count One asserts a claim for intentional infliction of emotional distress. Count Two asserts a claim for assault and battery. Count Three asserts a claim via 42 U.S.C. § 1983 for violations of her right to be free of unreasonable force pursuant to the Fourth Amendment of the Constitution of the United States.

The defendant has denied liability and has asserted multiple affirmative defenses. With regard to the affirmative defenses, the defendant has alleged that on June 23, 2014 the plaintiff entered Yale New Haven Hospital at approximately 4:00 a.m. and demanded to be allowed into the hospital to see a person whose name she did not know and whose phone number she could not provide. (Doc. 18, Answer and Affirmative Defenses, Fourth Affirmative Defense, ¶ 1). The defendant has alleged that Eduardo Diaz and Richard Dunn were licensed armed security officers within the meaning of Conn. Gen. Stat. § 29-152u, and that they informed the plaintiff that she could not be permitted entry to the hospital unless she could identify the particular person whom she intended to visit. (Id., at ¶¶ 2-3). The defendant has alleged that the plaintiff refused instructions to leave the premises of the hospital, thereby committing a trespass. (Id., at ¶ 5).

The defendant has alleged that during the course of the interactions with hospital security officers, the plaintiff became violent and assaulted Security Officer Richard Dunn, including but not limited to spitting on him, grabbing his genitals, and hitting, punching and kicking him. (Id.,

at ¶6).  The defendant has alleged that this incident resulted in the arrest of the plaintiff, and that subsequently, on May 6, 2015, the plaintiff pleaded guilty and was convicted of one count of assault in the third degree in violation of Conn. Gen. Stat. § 53a-61 in relation to her assault upon Richard Dunn and one count of breach of peace in the second degree in violation of Conn. Gen. Stat. § 53a-181.

Based upon these facts the defendant has asserted the following affirmative defenses, which are pertinent to this motion.  The Fifth Affirmative Defense is that the defendant's actions constituted the lawful actions of security officers.  The Sixth Affirmative Defenses is that the actions taken by the defendant were justified as part of a lawful citizens' arrest pursuant to Conn. Gen. Stat. § 53a-22(f).

The plaintiff never filed any reply to the defendant's affirmative defenses.

## II.    FACTS

Facts pertinent to this case are set forward in detail in the Local Rule 56(a)(1) Statement that has been filed simultaneously.  In summary, the plaintiff was involved in a motor vehicle accident at around 1:00 a.m. on June 23, 2014, and was transported via ambulance to the Yale New Haven Hospital, Inc. (hereinafter "Yale") emergency room for evaluation and treatment of those injuries and for suspected PCP use.  She arrived at Yale at approximately 2:00 a.m.   She was diagnosed with multiple injuries and conditions, including multiple abrasions, muscle strain, and substance abuse.  She was discharged from the emergency department shortly before 4:00 a.m. (*See*, Local Rule 56(a)(1) Statement, ¶¶ 11-33).

After being discharged, the plaintiff exited the Yale emergency room, and then re-entered the hospital at a different entrance at approximately 4:00 a.m.  She spoke with a Yale Security Officer (Eduardo Diaz) and demanded to be let in to speak with a nurse whose name she did not

know and could not provide.  (*See*, Local Rule 56(a)(1) Statement, ¶¶ 34-37).  Given that it was 4:00 a.m. and that the plaintiff could not identify the person whom she wanted to visit, Security Officer Eduardo Diaz informed the plaintiff that she could not remain in the hospital, and requested that she leave.  (*See*, Local Rule 56(a)(1) Statement, ¶¶ 38-41).

Thereupon, the plaintiff's deposition testimony in this case, and the account of the defendant's security officers diverge.  However, there is no genuine issue of material fact that in relation to the events that came next, the plaintiff was arrested for assault upon Yale Security Officer Richard Dunn, as well as other charges.  It is also undisputed that on May 6, 2015, the plaintiff pleaded guilty to one count of assault in the third degree wherein the victim of the assault was Yale Security Officer Richard Dunn, and to one count of breach of peace.  (*See*, Local Rule 56(a)(1) Statement, ¶¶ 56-60).

During the hearing in the criminal case in which the plaintiff pleaded guilty to the charge of assault in the third degree and breach of peace in the second degree, the plaintiff was required to admit the facts of her conduct, which were described by the prosecutor and <u>admitted</u> by the plaintiff as follows:

> Your Honor, June 23rd, 2014, in the town of New Haven, at that time officers dispatched to the area of Park Street near the intersection of Howard Avenue for a report of two officers struggling to subdue a female suspect who was fighting with them.  Upon arrival, made – officers made contact with Yale Protective Services, had a female in handcuffs.  They spoke with Yale Protective Services officer, stated that the defendant had attacked them and spit on one of them.  **The victim who was attacked was a one officer Richard Dunn.**  He stated that he was – he had – Ransome had been ordered to leave hospital property.  He had responded to make sure that she left.  As he was escorting – escorting her out he turned to speak with another officer, Ransome was alleged to have rushed at him and spit in his face.
>
> Upon arrival at the detentions, Marshals located a piece, - a small piece of folded aluminum foil on Miss Ransome's person that contained a black tarry substance which was later tested positive for the presumptive – presumptive positive for the presence of PCP.

(*See*, Local Rule 56(a)(1) Statement, ¶ 61).

Judge Melanie Cradle, canvassed the plaintiff and the plaintiff expressly admitted the facts as asserted by the prosecutor.

> THE COURT: Now, the State alleged the elements of the charge of assault in the third degree and breach of peace on the record.  **Do you agree substantially with the facts that the prosecutor recited?**
>
> THE DEFENDANT:  **Yes, Ma'am.**

(*See*, Local Rule 56(a)(1) Statement, ¶ 64).[1]

Following the canvass, Judge Cradle found the plaintiff's guilty plea to be knowing and voluntary, and to have a factual basis. Judge Cradle entered a finding of guilty on both charges. (*See*, Local Rule 56(a)(1) Statement, ¶¶ 62-68).

In her deposition in this case, the plaintiff has essentially denied the facts to which she previously admitted before the Connecticut Superior Court.  The plaintiff's lawsuit essentially asks this Court to undermine the factual and legal findings of the Connecticut Superior Court, and to instead find that Richard Dunn and his fellow security officers committed assault, rather than having been the victim of assault.  (*See*, Local Rule 56(a)(1) Statement, ¶¶ 73-93).  It is the position of the defendant that the plaintiff should not be permitted to undermine the findings of the Connecticut Superior Court and that the plaintiff should be held, in this action, to her prior admissions before the Connecticut Superior Court. Additionally, even if this Court were to consider the plaintiff's deposition testimony in this case, it is the position of the defendant that the plaintiff's evidence is insufficient to support the allegations of the complaint, and that as such, summary judgment should enter in its favor.

---

[1] The plaintiff, Veronica Ransome, is referred to as "the Defendant" in the transcript of the criminal hearing.

In relation to her alleged damages, the plaintiff has previously asserted an out-of-court claim for physical injuries against the driver of the car who hit her, in which she claimed that all of her physical injuries were the result of the car accident. The plaintiff's claims against the other driver were supported by the written opinion of her chiropractor, who attributed all of her injuries to the car accident.  The plaintiff received a settlement of approximately $7,000 in relation to that claim.  (*See*, Local Rule 56(a)(1) Statement, ¶¶ 94-100).  Additionally, the plaintiff admitted at her deposition that she has not suffered emotional injury in this case, and indicated that her mental health care, and emotional distress are related to pre-existing conditions including schizophrenia and post-traumatic stress disorder attributable to a traumatic house fire she experienced in 2007.  (*See*, Local Rule 56(a)(1) Statement, ¶¶ 101-114).  The plaintiff has not disclosed any expert witness to testify that any physical injury or emotional injury has been caused by the alleged incident at issue in this case.  Given these facts, the plaintiff will be unable to prove a causal connection between the alleged incident and her alleged damages.

Finally, with regarding to the plaintiff's third cause of action, which alleges violation of her fourth amendment rights, it is undisputed that the defendant, Yale New Haven Hospital and its employees are not agents of the state. (*See*, Local Rule 56(a)(1) Statement, ¶¶ 1-10).

## III.    LAW AND ARGUMENT

### A.    Standard on Motion for Summary Judgment.

Federal Rule of Civil Procedure 56(a) provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  A "material fact" is one whose

resolution will affect the ultimate determination of the case.  Id.  In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  Id. at 255.  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F. Supp. 959, 962 (D. Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256; Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once the moving party has satisfied its burden of demonstrating the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp., v. Catrett, 477 U.S. 317, 324 (1986).  "Neither courts nor defendants should be subjected to trial which can be little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

      B.    <u>Plaintiff's admissions regarding her conduct and her convictions for breach of peace in the second degree and assault in the third degree upon Officer Richard Dunn are binding upon her in this case.</u>

The United States Supreme Court has held, "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United States v. Broce, 488 U.S. 563, 569 (1989).  "A guilty plea is more than a confession which admits that the accused did various acts.  It is an admission that he committed the crime charged against him.  By entering a plea of guilty, the accused is not

simply stating that he did the discrete acts described in the indictment; he is admitted guilt of a substantive crime." Id., at 570 (internal quotations and citations omitted).

The courts have repeatedly held that guilty pleas are binding absent misrepresentation or other impermissible conduct by state agents. *See, e.g.* United States v. Broce, 488 U.S. 563, 572 (1989); United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) ("The self-inculpatory statements he made under oath at his plea allocution 'carry a strong presumption of verity,' and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant …"); SEC v. Illarramendi, 260 F. Supp. 3d 166, 177-179 (D. Conn. 2017) (finding that plaintiff's admissions during plea hearing and in statement of offense wherein he pleaded guilty to violations of the same statutory provisions under which the SEC sought summary judgment in the civil matter, had preclusive effect, and plaintiff would not be permitted to deny prior admissions in objection to motion for summary judgment).

"[A]s we explained in Mabry v. Johnson, 467 U.S. 504, 508 (1984)*,* '[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" United States v. Broce, 488 U.S. 563, 574 (1989). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

"A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." Adames v. United States, 171 F.3d 728,

732 (2d Cir. 1999).  In <u>Adames</u>, the plaintiff, Manuel Adames, was arrested when he and a co-defendant arranged to purchase a quantity of heroin from an undercover agent.   At the time of the arrest, Adames and the co-defendant had approximately $720,000 in their possession. Adames subsequently pleaded guilty to attempt to possess with intent to distribute an amount of heroin in excess of 100 grams, in violation of 21 U.S.C. § 841(a)(1).  During the course of his plea allocution, Adames admitted to making a pre-arranged plan to purchase the heroine.  He further admitted that he had money with him, admitting, "My part was $20,000.  The rest of it wasn't mine but there was a total of about $723,000." <u>Id.</u>, at 729.  After Adames' conviction, the government filed a civil asset forfeiture complaint, which resulted in over $714,000 being forfeited to the government." <u>Id</u>

Subsequently, Adames brought a claim against the government seeking return of the money, claiming that his due process rights had been violated because he had not received notice of the civil asset forfeiture complaint.  <u>Id</u>.  The government conceded that the plaintiff not received proper notice of the civil asset forfeiture complaint.  However, in a motion for summary judgment, the government contended that Adames had no right to the money because the statements that he made at his criminal allocution conclusively demonstrated that he had forfeited any interest he may once have had in the currency.  <u>Id</u>., at 732.  The district court agreed with the government and issued judgment in its favor.  <u>Id</u>., at 730.

On appeal, the Second Circuit affirmed the judgment of the district court. Citing the position that self-inculpatory statements made at allocution carry a strong presumption of verity, and that they are generally treated as conclusive, the Second Circuit held that Adames had admitted that the money was intended to be used to purchase the heroin, and was, therefore, forfeit pursuant to 21 U.S.C. § 811(a)(6).  The Second Circuit held that Adames had "failed to

adduce any evidence undermining the 'strong presumption' that his plea allocution statements were accurate[.]" Id., at 733.

In this case, the plaintiff was arrested and criminally charged in relation to her conduct on at Yale in the early morning hours of June 23, 2014. As indicated in the defendant's Local Rule 56(a)(1) Statement, the plaintiff ultimately pleaded guilty to assault in the third degree and breach of peace in the second degree in relation to her conduct at Yale on June 23, 2014. *See,* Local Rule 56(a)(1) Statement, ¶¶ 60-62. In so doing, she expressly admitted that she had been ordered by Yale Protective Services to leave the hospital property, that as she was being escorted off the property by security officers, she "rushed at" Security Officer Richard Dunn and "spit in his face." Id., at ¶ 61 and 64. Additionally, as part of her guilty plea the plaintiff admitted that these facts constituted the legal crimes of breach of peace in the second degree and assault in the third degree. Id., at 60-62.

Therefore, given the legal presumption of verity for facts and pleas entered admitted during a plea agreement, the plaintiff should not be permitted in this case to back track on those admissions. The Court should not accept or consider the plaintiff's self-serving testimony in this case to the extent that her testimony in this case is inconsistent with the admissions she made when she pleaded guilty to the assault against Security Officer Richard Dunn.

C.    Count One of the plaintiff's complaint, which alleges intentional infliction of emotional distress, fails because the defendant's conduct was not extreme and outrageous, and the plaintiff has admitted at deposition that her emotional distress is not caused by her interaction with the Yale security officers

Count One of the plaintiff's complaint sounds in intentional infliction of emotional distress. In order to prevail on a claim for intentional infliction of emotional distress, the plaintiff must present evidence sufficient to prove the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional

10

distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." <u>Appleton v. Bd. of Educ. of Town of Stonington</u>, 254 Conn. 205, 210 (2000).

> *1.     The Defendant's conduct was not extreme and outrageous.*

For purposes of the tort of intentional infliction of emotional distress, extreme and outrageous conduct is that conduct that exceeds "*all bounds* usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." <u>Petyan v. Ellis</u>, 200 Conn. 243, 254, n.5 (1986) (emphasis in original).

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."

<u>Dollard v. Board of Education</u>, 63 Conn. App. 550, 554 (2001)(internal citations and quotations omitted).

"Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Mellaly v. Eastman Kodak Co.</u>, 42 Conn. Supp. 17, 20 (1991), *quoting* <u>1</u> <u>Restatement (Second), Torts</u> § 46, comment (d).

In this case, there is no genuine issue of material fact that the security officers' conduct was not extreme and outrageous.  The plaintiff admitted in her criminal case related to this incident that she committed assault in the third degree against Security Officer Richard Dunn. Connecticut General Statutes § 53a-61(a) defines assault in the third degree as follows:

> A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a

third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

Connecticut General Statutes § 53a-181 defines breach of peace in the second degree as follows:

> A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such other person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do. For purposes of this section, "public place" means any area that is used or held out for use by the public whether owned or operated by public or private interests.

Thus, the plaintiff has admitted to facts and criminal conduct, including admitting that she caused injury to Security Officer Richard Dunn, and intended to cause injury to him or recklessly caused injury to him. Furthermore, she has admitted that she acted "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof" via her conduct on the premises of Yale on June 23, 2014. Given these admissions of the plaintiff, particularly her admission that she rushed at, spit at and assaulted Security Officer Richard Dunn, the actions of the Yale Security Officers in subduing her until New Haven Police arrived and took her into custody were neither extreme nor outrageous.

Furthermore, even if the Court were to look past the plaintiff's guilty plea, and take the plaintiff's deposition testimony in this case into account, there would still be no genuine issue of material fact. The plaintiff admitted that when she re-entered the hospital after being discharged from the emergency room, that it was approximately 4:00 a.m., and she did not know the name of the nurse whom she claimed to be asking to see. She also admitted that the security officer

12

told her that if she could not provide the name of the person whom she wished to see that she would not come into the hospital, and that she was asked to leave.  *See*, Local Rule 56(a)(1) Statement, ¶¶ 37-39 and 76.  Given the time and the fact that the plaintiff could not identify the person whom she wanted to see, it was customary practice of Yale Department of Protective Services that Ms. Ransome would not have been admitted to the hospital in order to protect the safety of patients and employees.  Id., at ¶ 39.  Given these facts it was reasonable for the Yale security officers to escort the plaintiff from the premises.  *See,* Kuhn v. People's Bank, Docket No. CV010454638, 2002 Conn. Super. LEXIS 3321, at *6-7 (Super. Oct. 4, 2002) ("Furthermore, the conduct of removing a fired employee from its premises under a security escort is not patently unreasonable."); Brown v. Mulcahy, Docket No. CV065001276S, 2007 Conn. Super. LEXIS 1938, at *1 (Super. July 23, 2007) (finding that incident of a security guard detaining a customer and directing racial slurs at her consisted of a single event which was not of extended duration, the guard's actions did not rise to the standard of "extreme" and "outrageous" behavior to meet the standard for the tort of intentional infliction of emotional distress).

Furthermore, the plaintiff did not testify to any physical interaction by Yale security officers that was extreme or outrageous.  The plaintiff testified that the first security officer with whom she interacted pushed her at her waist but otherwise had not touched her.  *See*, Local Rule 56(a)(1) Statement, ¶ 81.  She further admitted that she could not remember if the second officer had even touched her at all. Id., at ¶ 82.  Furthermore, although the plaintiff attempted to claim that Yale security officers where present when New Haven police "beat" her, she admitted that she did not actually know what, if anything, the Yale security officers had physically done to her. Id., at ¶¶ 84-85.

The plaintiff's vague allegations that she was touched in the course of being escorted from the premises and in being subdued after she attacked Officer Dunn are insufficient to support a legal finding that the defendant's actions were extreme and outrageous. Therefore, the plaintiff's claim for intentional infliction of emotional distress must fail.

> 2.    *Plaintiff's emotional distress, if any, was not caused by the actions of the Yale security officers.*

In this case, the plaintiff has failed to present any evidence to indicate that any emotional distress that she may suffer was caused by the defendant, and indeed, testified that her emotional distress has a different cause. The plaintiff has not disclosed any expert witnesses to testify regarding any physical or emotional injuries she is alleged to have suffered. Additionally, plaintiff's medical history and deposition testimony indicate that to the extent that the plaintiff suffers from emotional distress, that distress is caused by under underlying mental illness of schizophrenia, a significant history of drug abuse, and by post-traumatic stress disorder that emanates from a traumatic house fire that she experienced in 2007. The plaintiff specifically admitted at her deposition, that her mental health treatment is not in any manner related to the incident with the security officers. *See,* Local Rule 56(a)(1) Statement, ¶¶ 101-112). Given these admissions, there is no genuine issue of material fact that to the extent that the plaintiff has suffered any emotional distress it is not caused by her interaction with Yale security officers.

> D.    Count Three, which alleges assault and battery, fails because the defendant's actions were lawful.

"A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another." Dewitt v. John Hancock Mutual Life Ins. Co., 5 Conn. App. 590, 594, 501 A.2d 768 (1985), *quoting* 1 Restatement (Second), Torts § 21. "[L]iability for assault arises if . . . [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . the other is

thereby put in such imminent apprehension." (Internal quotation marks omitted.) Robles v. Dean, Docket No. FBTCV156048792, 2017 Conn. Super. LEXIS 167, at *17 (Super. Jan. 18, 2017), *quoting* Simms v. Chaisson, 277 Conn. 319, 331, 890 A.2d 548 (2006), *quoting* 1 Restatement (Second), Torts §21 (1965).  "The intent necessary to establish liability is the intent of the actor rather than the perception of the victim. In order to be held liable it is necessary that the actor intend to inflict a harmful or offensive bodily contact upon the other or a third person or put him in apprehension of such contact. Unless he acts with such intent, the actor is not liable for an assault . . ." Hanson v. Hospital of Saint Raphael, Docket No. CV-03-0480365, 2007 Conn. Super. LEXIS 1914, at *3 (Super. July 20, 2007) (internal citations and quotations omitted).

"A battery is a completed assault. In order to establish liability for the assault and battery, the plaintiff must prove the defendant …intended to cause her harm and **in fact did cause her harm.**" Hanson, 2007 Conn. Super. LEXIS 1914, at *2 (emphasis added).  "[L]iability for battery arises if . . . [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . a harmful contact with the person of the other directly or indirectly results." Robles, 2017 Conn. Super. LEXIS 167, at *17, *quoting* Simms v. Chaisson, 277 Conn. 319, 331, 890 A.2d 548 (2006), *quoting* 1 Restatement (Second), Torts §13 (1965).

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to her and that the application of force or violence was unlawful." Williams v. Lopes, 64 F. Sup. 2d 37, 47 (D. Conn. 1999), *quoting,* Moriarty v. Lippe, 162 Conn. 371, 389, (1972).

In Hanson v. Hospital of St. Raphael, Docket No. CV-03-0480365, 2007 Conn. Super. LEXIS 1914, at *2 (Conn. Super. July 20, 2007), the plaintiff was admitted to the hospital with

multiple chronic psychiatric diagnosis, after having engaged in self-harm by intentionally cutting her own arm following an angry and stressful conversation with her former romantic partner. Id., at * 9-10.  After being examined in the emergency room, an examining physician was concerned that the plaintiff's actions were a suicide attempt, and advised the plaintiff that he intended to involuntarily commit her to the hospital pursuant to Connecticut General Statutes § 17a-502(a).  Id., at * 10-11. After being informed of this the plaintiff became agitated and security officers were called to help escort her to the psychiatric waiting room.  Id., at * 12.  On the way, the plaintiff attempted to elope from the hospital, and security guards prevented her from doing so.  The plaintiff became more agitated and aggressive, including hitting the guard, biting and spitting as security guards brought her to the floor, and handcuffed her until a stretcher could be located.  Thereafter, the handcuffs were removed and she was placed in soft four-point medical restraints instead.  Id., at * 12-13.

The court (Cosgrove, J.) ruling in a post-trial memorandum of decision, found that there was no evidence that the defendant's security officers intended to cause harm to the plaintiff or injure the plaintiff or that they did so negligently.  The court noted that the plaintiff had not presented any expert testimony to evaluate the conduct of the security guards.  The court, therefore, found that the plaintiff had not met her burden of proof.

In this case, the security guards were exercising their lawful authority to remove the plaintiff from the premises after she had been treated and released, and had no legitimate business upon the premises. Additionally, they acted to restrain the plaintiff pending the arrival of police after the plaintiff had assaulted Security Officer Richard Dunn.  There is no evidence to indicate that the security officers intended to cause the plaintiff harm or that they did so

negligently.  The plaintiff has not disclosed any expert to testify regarding the conduct of the security officers.

Additionally, a finding of assault on the part of the security officers would undermine the plaintiff's criminal conviction for assault in the third degree against Security Officer Richard Dunn.  The plaintiff's testimony in this case, contradicts her admissions in her criminal hearing, and attempts to portray her herself as victim rather than as the lawfully convicted perpetrator. Had the Yale security officers assaulted the plaintiff, the plaintiff would have had a valid defense of self-defense to the criminal charges against her.  However, the plaintiff chose to plead guilty and in so doing admitted the truth of the fact that she had assaulted Security Officer Dunn, and committed breach of peace.

Moreover, in order to prevail upon a claim of assault and battery the plaintiff must show that the defendant did, in fact, cause her harm.  In this case, there is no evidence of any harm to the plaintiff as a result of the defendant's action.  There is no genuine issue of material fact that the plaintiff was involved in a car accident approximately three hours before the subject incident, and that she received multiple physical injuries in that accident. *See,* Local Rule 56(a)(1) Statement, ¶¶ 11-33.  There is also no genuine issue of material fact that after the incident in this case, the plaintiff made a claim against the insurance company of the driver whose car had hit her and that as part of that claim she asserted the same injuries that she claims in this case, and for which she ultimately received an out-of-court settlement.  *See,* Local Rule 56(a)(1) Statement, ¶¶ 94 and 100.  There is no genuine issue of material fact that as part of her claim against the other driver that the plaintiff submitted two written reports from her treating chiropractors, which opined that all of the plaintiff's injuries were sustained as a result of the car accident, and that neither report mentioned the interaction with the Yale security officers, and did

17

not attribute any of her alleged injuries to the interaction with the Yale security officers.  *See,*
Local Rule 56(a)(1) Statement, ¶¶ 95-99.  Furthermore, the plaintiff admitted at deposition that
all of her medical expenses that she incurred in relation to any injuries were the result of the car
accident, not her interaction with Yale security officers.  Id., at ¶ 113.

      Furthermore, the plaintiff has not identified any expert who will testify that any of her
alleged injuries were caused by the actions of the Yale security officers. Poulin v. Yasner, 64
Conn. App. 730, 738 (2001) ("Expert medical opinion evidence is usually required to show the
cause of an injury or disease because the medical effect on the human system of the infliction of
injuries is generally not within the sphere of the common knowledge of the lay person."); State v.
McClary, 207 Conn. 233, 245 (1988) ("A diagnosis of the victim's injuries and a determination
of their cause from simply a knowledge of her symptoms and the results of the various tests and
examinations she underwent is manifestly beyond the ken of the average trier of fact, be it judge
or jury.").  Therefore, given that the records clearly document that the plaintiff received injuries
as a result of the car accident that occurred only three hours before the subject incident, that the
plaintiff has previously made a claim asserting that her injuries were caused by the car accident,
that the plaintiff admitted that all of her medical expenses that she incurred in relation to her
injuries were related to the car accident, and that the plaintiff has not disclosed any expert to
testify that any of her alleged injuries were caused by the interaction with security personnel,
there is no genuine issue of material fact that the plaintiff's alleged physical injuries were not
caused by the subject incident.

      Furthermore, the plaintiff will similarly be unable to prove that she suffered any
emotional harm as a result of the alleged incident.  The plaintiff has a significant history of other
sources of emotional injury and distress in her life, including serious psychiatric illness of

schizophrenia, a prolonged history of PCP use, and a pre-existing diagnosis of post-traumatic

stress disorder resulting from a 2007 house fire that she experienced.  *See*, Local Rule 56(a)(1)

Statement, ¶¶ 101-111.  The plaintiff also admitted at her deposition that her mental health

conditions and treatment are not related to the incident with the Yale security officers.  Id., at ¶

112.  Furthermore, the plaintiff has not disclosed any expert to testify that any alleged emotional

injury from which she may suffer is caused by the subject incident.  Therefore, there is no

genuine issue of material fact that the plaintiff has not suffered any emotional injury as a result

of the alleged incident.  Finally, the plaintiff is not claiming loss of income, loss of work,

inability to work or loss of earning capacity as a result of the alleged incident.  *See*, Local Rule

56(a)(1) Statement, ¶ 115.   Therefore, there is no genuine issue of material fact that the incident

with Yale security officers did not cause the plaintiff to suffer any harm.

> E.   Count Three, which alleges Constitutional violations, fails because the defendant is not a state actor.

It is a well settled matter of constitutional law that the prohibitions on excessive force

contained within the Fourth and Fourteenth Amendments apply only to the federal and state

governments, respectively.  As expressed by the Second Circuit:

> Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.... State action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor.

> Flagg v. Yonkers Savings & Loan Assn., 396 F.3d 178, 186 (2d Cir. 2005) (internal

citations and quotations omitted).

"A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003).  The Second Circuit has held:

> For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Cranley v. Nat'l Life Ins. Co.*, 318 F.3d 105, 111 (2d Cir. 2003) (internal quotations omitted). A nexus of "state action" exists between a private entity and the state when "the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.

Flagg, 396 F.3d at 187.

"[C]ourts have held that the act of detaining an individual suspected of wrongdoing until the police arrive does not constitute state action under §1983. For example, '[g]enerally, the acts of private security guards hired by a store, do not constitute state action under §1983' and therefore '[c]ourts within the Second Circuit have repeatedly held that store security personnel are not state actors when they detain or call for the arrest of suspected shoplifters.'" Rose v. City of Waterbury, Docket No. 3:12cv291(VLB), 2013 U.S. Dist. LEXIS 39250, at *17 (D. Conn. Mar. 21, 2013), *quoting,* Jones v. J.C. Penney's Dept. Stores, Inc., No.03-CV-920A, 2007 U.S. Dist. LEXIS 39680, 2007 WL 1577758, at *7 (W.D.N.Y. 2007).

Rose v. City of Waterbury, Docket No. 3:12cv291(VLB), 2013 U.S. Dist. LEXIS 39250, (D. Conn. Mar. 21, 2013) involved facts similar to this case.  Rose was a wrongful death case in which the plaintiff sued St. Mary's Hospital pursuant to 42 U.S.C. § 1983, alleging that the decedent had entered the hospital seeking treatment, and that hospital personnel had called police and physically restrained the decedent prior to police arrival.  The plaintiff claimed that St. Mary's Hospital had violated several of the plaintiff's constitutional rights, including the

plaintiff's right to be free from excessive force.  In dismissing the complaint against St. Mary's Hospital, the District Court reasoned, if "Hospital staff called the Police and physically restrained [the decedent] until the Police arrived those facts would not demonstrate that the Hospital's action were fairly attributable to the state. It has long been established that the mere act of calling the police does not constitute state action." Id., at *15.

The District Court in Rose further reasoned, "There are two recognized exceptions to this general rule, first when private security guards are given the authority of state law or willfully participated in the joint activity of the State or its agents. Courts have explained that willful participation in joint activity requires more than a general understanding that the security guards can call the police for assistance. The police must allow the security guard's judgment about whether probable cause exists to be substituted for their own by failing to make any independent investigation." Id., at *17-18.

In this case, there is no genuine issue of material fact that Yale New Haven Hospital, Inc., is a private non-stock corporation. Indeed, the plaintiff's complaint specifically pleads this fact. See. Local Rule 56(a)(1) Statement, ¶ 1.  The Yale Department of Protective Services is not a police department and is not an agent of the state or federal government or of any municipality or municipal police department.  See. Local Rule 56(a)(1) Statement, ¶¶ 2-6.  Furthermore, none of the three Yale employee security officers involved in this incident were police officers or agents of the state or federal government.  See. Local Rule 56(a)(1) Statement, ¶¶ 7-10.

Neither of the exceptions to the general rule that private entities are not state actors applies in this case. The security guards were not deputized or given any other particular state authority, and they were not participating in a joint activity with any state actors.   There is no genuine issue of material fact in this case that the Yale security officers called the police, and

21

detained the plaintiff while waiting for the arrival of police.  There is no evidence that the police allowed the security guards' judgment to be substituted for their own.  Officer Silvestrini questioned both Security Officer Dunn, and Security Officer Diaz, as well as the plaintiff, and made personal observations of those involved prior to arresting the plaintiff.  *See,* Local Rule 56(a)(1) Statement, ¶¶ 43-57.  Therefore, in this case, the Yale Protective Services Officers were not acting as police officers, or as agents or the state.  They were acting in a purely private capacity.  Therefore, judgment must enter in favor of the defendant on the Third Count of the complaint.

       F.      <u>Summary judgment should enter in favor of the defendant on the defendant's Fifth Affirmative Defense.</u>

All three of the security officers involved in the incident with the plaintiff were armed proprietary security officers, employed by Yale New Haven Hospital and working within its Department of Protective Services, which is an armed proprietary security agency registered with the State of Connecticut. *See*, Local Rule 56(a)(1) Statement, ¶¶ 2-9.  The responsibilities of the Yale Department of Protective Services and its security officers include protecting the safety of the employees, patients and property of Yale New Haven Hospital.  *See*, Local Rule 56(a)(1) Statement, ¶ 10.  As such, the Yale Department of Protective Services and the employees involved in this case are armed security officers within the meaning of Connecticut General Statutes § 29-152u(1).

Pursuant to Connecticut General Statutes § 29-152u(7), security officers and armed security officers are authorized to "safeguard and protect persons and property, by (A) the detection or prevention of any unlawful intrusion or entry, larceny, vandalism, abuse, arson or trespass on the property such security officer is hired to protect, or (B) the prevention, observation, or detection of any unauthorized activity on the property the security officer was

hired to protect."  Connecticut General Statutes § 29-161u expressly provides that security services have the authority to perform investigation of offenses upon the property that the security service is employed to service.

Pursuant to Connecticut General Statute § 53a-107(a) a person is guilty of criminal trespass when he or she "remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person."  In this case, it is undisputed that the plaintiff had already been discharged from the Yale emergency room when she re-entered the hospital via a different entrance at approximately 4:00 a.m.  Additionally, it is undisputed that the plaintiff was ordered to leave by Yale security officers.  As such, the officers were within their authority to safeguard and protect persons and property by escorting the plaintiff off of Yale's property.

Additionally, the plaintiff admitted during her criminal case that as she was being escorted from the premises, she rushed at Security Officer Richard Dunn, and spit in his face, and that such action constituted assault.  Therefore, the officers were acting within the scope of their authority to "safeguard and protect persons" on the Yale property and to prevent further abuse and trespass by detaining the plaintiff pending the arrival of police, *See, e.g.* Hanson v. Hospital of Saint Raphael, Docket No. CV030480365, 2007 Conn. Super. LEXIS 1914, (Conn. Super. July 20, 2007) (finding the security officer's actions in preventing plaintiff from escaping hospital, and in restraining patient who was danger to self or others were lawful); Baptiste v. K Mart Corp., No. CV93-0113647, 1996 Conn. Super. LEXIS 1224, at *4 (Super. May 10, 1996) (security officer had "just cause to stop and detain the plaintiff" whom he reasonably believed to have been shoplifting).

Therefore, judgment should enter in favor of the defendant on its Fifth Affirmative

Defense.

      G.    <u>Summary judgment should enter in favor of the defendant on the defendant's</u>
<u>Sixth Affirmative Defense.</u>

The defendant's Sixth Affirmative Defense is that the defendant's actions constituted a

lawful citizen's arrest pursuant to Conn. Gen. Stat. § 53a-22(f).  Connecticut General Statutes §

53a-22(a) provides, "For purposes of this section, a reasonable belief that a person has

committed an offense means a reasonable belief in facts or circumstances which if true would in

law constitute an offense."  Connecticut General Statutes § 53a-22(f) provides:

> A private person acting on his or her own account is justified in using reasonable
> physical force upon another person when and to the extent that he or she
> reasonably believes such to be necessary to effect an arrest or to prevent the
> escape from custody of an arrested person whom he or she reasonably believes to
> have committed an offense and who in fact has committed such offense; but he or
> she is not justified in using deadly physical force in such circumstances, except in
> defense of person as prescribed in section 53a-19."

The Connecticut Appellate Court has held:

> According to the plain language of the statute, a private citizen may use
> reasonable force in arresting an individual whom he reasonably believes has
> committed an offense. If the arrested individual did not commit an offense,
> however, regardless of the reasonableness of the private citizen's belief, the latter
> is not justified in making a citizen's arrest. There is no requirement in § 53a-22
> that the citizen making the arrest must also have witnessed the commission of the
> offense or have come upon the scene shortly after its occurrence, nor has our
> Supreme Court put such a gloss on the statute.

<u>State v. Smith</u>, 63 Conn. App. 228, 238 (2001).

In this case, there is no genuine issue of material fact that the plaintiff committed assault

upon Yale Security Officer Richard Dunn, and that she committed breach of peace in the second

degree in relation to her conduct at Yale New Haven Hospital on June 23, 2014 given her guilty

plea and allocution to the facts of those charges. Therefore, given that the plaintiff was ultimately

convicted of the assault and breach of peace, there can be no genuine issue of material fact that

the security officers reasonably believed that the plaintiff had committed the offenses of assault and breach of peace when they detained her pending the arrival of New Haven police.

Furthermore, as discussed above the force used upon the plaintiff was not excessive as described by the plaintiff. Specifically, the plaintiff stated that one security guard pushed her on her waist but otherwise did not touch her, and that she did not remember the second security officer touching her at all. *See,* Local Rule 56(a)(1) Statement, ¶¶ 80-82.  The plaintiff could not affirmatively identify any other more forceful conduct that was committed by the Yale security officers, stating, "I don't know what they were doing while they were right there and the police were right there." *See,* Local Rule 56(a)(1) Statement, ¶ 85.   Additionally, the plaintiff has previously asserted in a separate claim that all of the physical injuries she suffered on the date of this incident were the result of the car accident, not her interaction with the security officers. *See,* Local Rules 56(a)(1) Statement, ¶¶ 94-100. She admitted that all of the medical bills that she incurred were caused by the car accident, and not her interaction with Yale security officers. *See,* Local Rules 56(a)(1) Statement, ¶ 113.

Therefore, there is no genuine issue of material fact that the security officers effected a valid citizen's arrest, and that they used reasonable force during the course of that arrest. Therefore, summary judgment should enter in favor of the defendant on its Sixth Affirmative Defense.

## IV.   CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of

defendant, Yale New Haven Hospital, Inc. on all counts of the plaintiff's complaint and on the

defendant's Fifth Affirmative Defense and Sixth Affirmative Defense.

THE DEFENDANT,
Yale New Haven Hospital, Inc.

BY:    /s/     Rebecca M. Harris
Rebecca M. Harris (ct26669)
Crumbie Law Group, LLC
100 Pearl St., 12th Floor
Hartford, CT 06103
(860) 725-0025
RHarris@crumbielaw.com

DAVID A. RING (ct14362)
Wiggin and Dana LLP
265 Church Street, P. O. Box 1832
New Haven, CT 06508-1832
203-498-4377
Fax: 203-782-2889
dring@wiggin.com

<u>CERTIFICATION</u>

     This is to hereby certify that on December 28, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


<u>/s/ Rebecca M. Harris</u>
Rebecca M. Harris